IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATLANTIS PETROLEUM, LLC | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-2517 |
| GETTY PETROLEUM MARKETING, INC., | : | |
| LUKOIL AMERICAS CORPORATION, and | : | |
| SEMYON LOGOVINSKY | : | |

SURRICK, J.                                                       APRIL 19, 2011

## MEMORANDUM

Presently before the Court is the Motion of Plaintiff Atlantis Petroleum, LLC, for Temporary Restraining Order and Preliminary Injunction. (ECF No. 4.) For the following reasons, the Motion will be granted.

### I.    BACKGROUND

Plaintiff Atlantis Petroleum leases 71 service stations from Defendant Getty Petroleum Marketing. The franchise agreement between Plaintiff and Defendant was entered into subject to the Petroleum Marketing Protection Act, 15 U.S.C. §§ 2801 *et seq.* ("PMPA"), which limits the circumstances under which a petroleum franchisor such as Defendant can terminate the franchise relationship with a franchisee such as Plaintiff. Under the franchise agreement, Plaintiff subleases the service stations and purchases fuel from Defendant. Plaintiff purchased fuel on credit, with the outstanding balance usually being in the range of $6 million, by either tacit or explicit agreement of the parties.

In 2008, Plaintiff made a large purchase of diesel fuel from Defendant. Gas prices dropped precipitously soon after, forcing Plaintiff to sell the fuel at a considerable loss. As a result,

Plaintiff's credit balance with Defendant ballooned to over $10 million, some of which was past due. Plaintiff entered into three agreements with Defendant in January 2009: a security agreement that granted Defendant a security interest in Plaintiff's assets; a cash-management agreement that permitted Defendant to control all cash inflows and business expenses from Plaintiff's business; and a forbearance agreement in which Defendant agreed to forbear from taking action to collect Plaintiff's debt.

Plaintiff made little progress in paying off the debt over the following year. In early 2010, Plaintiff and Defendant met with Plaintiff's banker to discuss a bank loan that would assist Plaintiff with paying down its debt to Defendant. Plaintiff contends that the parties conceived of a plan under which the bank would lend Plaintiff $20 million and extend a $1 million letter of credit to Plaintiff, who would use the credit to pay down its debt to Defendant to the $6 million level to which the parties had grown accustomed. Defendant would sublease 58 additional service stations to Plaintiff, who would use the revenue from these additional stations to pay down the line of credit it had received from its bank. The bank extended the loan, and Plaintiff paid approximately $4.5 million to Defendant, who terminated the security interest and forbearance agreement as a result. Defendant never provided Plaintiff with the additional 58 service stations that Plaintiff believed it was entitled to under the terms of the deal. While Defendant agrees that the 58 additional service stations were mentioned during the discussions with Plaintiff and the bank, it contends that there was never an actual agreement to sublet those stations to Plaintiff.

In or around February 2011, Defendant informed Plaintiff that it would no longer supply Plaintiff's service stations with fuel. Plaintiff arranged for an alternative fuel supplier and continued operations. On March 25, 2011, Defendant sent Plaintiff a letter terminating Plaintiff's sublease of its service stations effective April 25, 2011. Defendant informed Plaintiff via letter at

2

approximately 11:35 am on April 11, 2011, that it was terminating Plaintiff's sublease as of noon that same day. The letter requested that Plaintiff surrender the service stations no later than April 13, 2011.

What occurred thereafter was the classic race to the courthouse. Defendant filed suit against Plaintiff in the Southern District of New York on April 12, 2011, alleging breach of contract and seeking an order requiring Plaintiff to surrender the service stations it currently leases from Defendant. *See* Complaint, Getty Petroleum Marketing, Inc., v. Atlantis Petroleum, Inc., No. 11-2471 (S.D.N.Y. Apr. 12, 2011) (the "New York Litigation"). Plaintiff filed the instant action later the same day and immediately filed a motion in the New York Litigation to transfer the case to the Eastern District of Pennsylvania. Plaintiff argued that under § 2805(a) of the PMPA, the only appropriate fora for this litigation are the Eastern District of Pennsylvania and the Eastern District of New York. The New York court denied Plaintiff's motion, concluding that § 2805(a) permits a franchisee to file suit in those districts but does not require it, and that in any event, Defendant is a franchisor, not a franchisee. *See* Opinion, Getty Petroleum Marketing, Inc., v. Atlantis Petroleum, Inc., No. 11-2471 (S.D.N.Y. Apr. 15, 2011). The New York court scheduled a preliminary injunction hearing for April 19, 2011, at 11 am.[1]

Plaintiff requests pursuant to § 2805(b)(2) of the PMPA that we issue a temporary restraining order ("TRO") preventing Defendant from terminating its agreements with Plaintiff.

---

[1] At the hearing on Plaintiff's request for the temporary restraining order, we attempted to get the parties to agree that the entire dispute between them could be litigated either in the Eastern District of Pennsylvania or in the Southern District of New York. Plaintiff would not agree to the matter being heard in the Southern District of New York, and Defendant would not agree to the matter being heard in this Court. Accordingly, we went on to hear the respective positions of the parties.

## II.　DISCUSSION

Atlantis seeks a temporary restraining order which (1) bars Getty "from terminating the Sublease and Distributor Agreement;" (2) prohibits Getty "from interfering with Atlantis's quiet enjoyment of the premises subject to the sublease and use of the trademarks and other intellectual property licensed to it pursuant to the Distributor Agreement;" and (3) requires Getty "to supply fuel to Atlantis in accordance with the Distributorship Agreement."

"The PMPA was enacted in 1978 in recognition of 'the disparity of bargaining power which exists between the franchisor and the franchisee' in the gasoline industry." *Sun Refining and Marketing Co. v. Rago*, 741 F.2d 670, 672 (3d Cir. 1984) (*quoting* S. Rep. No. 731, 95th Cong., 2d Sess. 17, U.S.Code Cong. & Admin.News 1978, pp. 873, 877). The PMPA provides that a franchisor may terminate a franchise only for certain "statutorily prescribed reasons." *Id.* If termination is otherwise appropriate, the franchisor must also provide the franchisee with adequate notice of the proposed termination. *Id.* The franchisor who wishes to terminate the franchise bears the burden of demonstrating compliance with the statutory provisions. *Id.* "The effect of the PMPA thus is to create a presumption that any termination of a franchise is unlawful." *Id.*

"[The] PMPA was designed to benefit the small retailer and its standard for preliminary injunctions was intentionally drawn to facilitate the grant of injunctive relief." *Barnes v. Gulf Oil Corp.*, 824 F.2d 300, 306 (4th Cir. 1987). In "marked contrast" to the ordinary standard, which requires "the moving party [to] demonstrate a likelihood of success on the merits and irreparable harm to its interests," *Hilo v. Exxon Corp.*, 997 F.2d 641, 643 (9th Cir. 1993), the PMPA provides that:

4

> the court shall grant a preliminary injunction if—
>
> (A) the franchisee shows—
>
>> (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and
>>
>> (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
>
> (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)(2). This provision allows "franchisees to obtain a preliminary injunction upon a lesser showing than is usually required." *Sun Refining*, 741 F.2d at 672; s*ee also Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 865 (7th Cir. 2002) (noting "the lenient standard for obtaining injunctive relief under the PMPA").

Plaintiff argues that this lenient standard entitles it to an injunction against Defendant's attempt to eject it from its service stations in the New York Litigation. (Pl.'s Br. 21-43, ECF No. 4-1.) It is undisputed that Defendant has terminated the franchise relationship. The only inquiries are therefore whether "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation" and whether the balance of hardships favors Plaintiff. § 2805(b)(2)(A), (B).

We find that there are "serious questions" about the propriety of Plaintiff's termination and the amount of notice Plaintiff was afforded. The different versions of the events leading up to the termination raise a serious question as to whether Atlantis's failure to pay its debt was due to circumstances beyond its reasonable control—namely, its reasonable reliance upon the allegedly

false promises of Getty—and therefore whether such failure constituted grounds under the PMPA for termination of the franchise agreement. We also find that there is a serious question as to whether Plaintiff was afforded the 90 days' notice required by § 2804(a)(2), as Plaintiff alleges that it was given only 30 days' notice of termination, which was subsequently reduced to approximately 25 minutes' notice.

In addition, we conclude that "the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted." § 2805(b)(2)(B). Plaintiff will essentially be out of business if the franchise agreement is terminated. This is greater than the hardship that will be imposed on Defendant if we grant Plaintiff's Motion.

Defendant does not strenuously contest whether Plaintiff is entitled to a TRO under the PMPA's lenient standard. Rather, Defendant argues that comity counsels in favor of restraint. It is true that courts should be reluctant to enjoin proceedings in a sister court. *See Darr v. Burford*, 339 U.S. 200, 204 (1950) ("[C]omity . . . teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."); *see also Transcore, L.P. v. Mark IV Indus. Corp.*, No. 09-2789, 2009 WL 3365870, at *8 (E.D. Pa. Oct. 15, 2009) (noting "the general judicial reluctance to enjoin a party from proceeding with a suit in another district"). Thus, courts in which an action is first filed generally have the power to enjoin subsequent actions regarding the same subject matter that are brought in other courts. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971-72 (3d Cir. 1988). "That authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances,

6

inequitable conduct, bad faith, or forum shopping. District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *Id.* at 972.

We find that because of the language and purposes of the PMPA, the instant action is one of the "rare or extraordinary" cases in which the first-filed rule does not apply. *Id.* The PMPA was enacted by Congress to protect franchisees from arbitrary termination of their franchises. *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 293 (3d Cir. 2008). Congress found that franchisors had used their superior bargaining power and threat of unfair termination to gain an advantage in contract disputes with franchisees. *Slatky v. Amoco Oil Co.*, 830 F.2d 476, 478 (3d Cir. 1987) (en banc). "Congress therefore enacted legislation giving petroleum franchisees rights against termination and non-renewal of their franchises." *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 588 (3d Cir. 1989).

Section 2805(b)(2) states, in no uncertain terms, that "the court *shall* grant a preliminary injunction" if the franchisee meets the more lenient standard for injunctive relief prescribed by the PMPA. (Emphasis added.) Although "'comity' ha[s] an established and substantial role in informing the exercise of the court's discretion," *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 120 (1981), Congress has afforded courts little discretion in determining whether a franchisee is entitled to injunctive relief under the PMPA. We therefore find that the principle of comity, which is designed to "inform the exercise of the court's discretion," *id.*, does not apply where Congress has provided courts with little discretion. *See id.* at 120-21 (noting that "[t]here is little room for 'the principle of comity' in actions" where "judicial discretion is at a minimum"); *see also id.* at 121 n.5 ("[T]he role of comity must narrow with the scope of judicial discretion."). We believe that in this case we are not afforded discretion to simply ignore the express command

7

of Congress in favor of the first-filed rule and principles of comity.

We further note that the New York Litigation is a breach of contract action that seeks to evict Plaintiff from the service stations it operates. It was not brought under the PMPA—a distinction that both Defendant and the New York court noted in addressing Plaintiff's motion to transfer. By contrast, the instant action was brought by Plaintiff under the PMPA. These are properly viewed as two different actions, though they involve the same subject matter, and the law in the instant case entitles Plaintiff to an injunction to prevent termination of its franchise agreement if Plaintiff meets certain requirements. Defendant argues that if Plaintiff is entitled to a TRO under the PMPA, it can raise that issue in the eviction hearing in New York. But the PMPA does not merely provide franchisees with a defense to be used during eviction proceedings. Section 2805 gives franchisees the right to not be subject to an eviction proceeding in the first place if there is cause to believe that there are "sufficiently serious questions going to the merits to make such questions a fair ground for litigation." As the New York Action is essentially an eviction hearing brought under a different legal theory for the express purpose of terminating Plaintiff's franchise agreement, we have no choice under the PMPA but to enjoin Defendants from proceeding in that action.

## III. CONCLUSION

Entering a temporary restraining order here while the New York court is considering similar issues is not a step we take lightly. However, it is clear that in enacting the PMPA, Congress intended to protect franchisees from precisely the sort of fast-track termination of their franchises that Defendant is apparently pursuing in the New York Litigation. The statutory scheme states that if a franchisee demonstrates that it is entitled to an injunction, courts do not have

discretion to withhold it. Under the circumstances we have very little choice. For these reasons, Plaintiff's Motion for Temporary Restraining Order will be granted.

An appropriate order follows.

BY THE COURT:

_____
R. Barclay Surrick, Judge